UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JURIJUS KADAMOVAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:23-cv-00022-MPB-MKK |
| ) | |
| FEDERAL BUREAU OF PRISONS, ) | |
| STEVEN KALLIS, ) | |
| THOMAS J. WATSON, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING MOTION TO DISMISS**

Plaintiff Jurijus Kadamovas, on his own behalf and on behalf of a class of those similarly situated, sued the Director of the Federal Bureau of Prisons (BOP) and the Warden of the United States Penitentiary in Terre Haute, Indiana (USP-Terre Haute), in their official capacities. Mr. Kadamovas is housed in the Special Confinement Unit (SCU) at USP-Terre Haute, also known as "death row." The complaint alleges Mr. Kadamovas and the other prisoners on death row are held in severely isolating and solitary conditions, causing severe psychological and emotional harm, in violation of their Eighth Amendment rights. Mr. Kadamovas alleges he has suffered physical, mental, and emotional injuries and harm by the conditions that exist in the SCU. The complaint seeks injunctive and declaratory relief on behalf of a class of all SCU prisoners.

Defendants move the Court to dismiss the First Amended Class Action Complaint for Declaratory and Injunctive Relief, dkt. 67, for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Dkt. 72. They argue that the Amended Complaint does not plead factual allegations that would satisfy either the objective or subjective components of an Eighth Amendment conditions-of-confinement claim, both of which are

required. First, they assert that the allegations do not reflect an "extreme deprivation." Dkt. 73 at 7. Second, they claim that there are no facts reflecting that any Defendant had actual knowledge of a substantial risk of serious harm and disregarded it. *Id.* at 8. Defendants ask the court to decline to intervene in the BOP's day-to-day management of death row. *Id.* at 8. Mr. Kadamovas responded in opposition, dkt. 76, and Defendants replied, dkt. 82. A two-page amicus brief was also considered. Dkt. 88-1; *see also* dkt. 108.

For the reasons explained below, the motion to dismiss, dkt. [72], is **DENIED** and the Appeal of the Magistrate Judge Decision denying the motion to temporarily stay discovery pending resolution of the motion to dismiss, dkt. [86], is **DENIED as moot.**

## I. Legal Standard

To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). Defendants argue, however, that the pleading standard for an Eighth Amendment conditions of confinement claim is "demanding." Dkt. 73 at 7; dkt. 82 at 2-8. Meanwhile, Mr. Kadamovas and the amicus brief argue that the amended complaint must simply comply with the liberal notice pleading standard of Federal Rules of Civil Procedure 8(a) by setting forth a plausible claim. Dkt. 88-1 at 2.

This Court agrees with Mr. Kadamovas. Under Federal Rule of Civil Procedure 8(a) Mr. Kadamovas is required to include "a short and plain statement of [his] claim[s]" to give Defendants fair notice of each of his claims "and the grounds upon which [they] rest[ ]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (internal quotations omitted); *see also Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 800 (7th Cir. 2018). Thus, "it is manifestly inappropriate for a district court to demand that complaints contain all legal elements

(or factors) plus facts corresponding to each." *Rowlands,* 901 F.3d at 800 (quoting *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017)).

In considering the motion, Mr. Kadamovas's factual allegations are accepted as true and given the benefit of all reasonable inferences. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019). The Court "may also take judicial notice of matters of public record and consider documents incorporated by reference in the pleadings." *Id.*

## II. First Amended Complaint

Since receiving the death sentence in 2007, Mr. Kadamovas has been confined in the SCU at USP-Terre Haute. Dkt. 67 ¶¶ 48–49. Prisoners in the SCU comprise a unique inmate population because the SCU is "the only unit in the United States Bureau of Prisons dedicated exclusively for male prisoners sentenced to death by federal courts," *id.* ¶ 1, typically under the Federal Death Penalty Act, 18 U.S.C. §§ 3591–98. Prisoners in the SCU have been convicted of a federal death-eligible offense. *Id.* at § 3591.

Prisoners in the SCU are housed in their own individual cells. Dkt. 67 ¶ 24. The SCU cells are small, measuring about 7 feet by 12 and ½ feet, *id.* ¶ 24, and cramped, with a bed, table, stool, sink/toilet unit, and shower all taking up a portion of that square-footage, *id.* ¶ 27. Fresh air is not available in SCU cells; instead, prisoners have only a small, slit-like window to the outside world that does not open. *Id.* ¶ 26. There is no built-in way for the prisoners to communicate with one another between cells, so they are forced to yell if they want to communicate, which can result in a noisy environment. *Id.* ¶ 42. The cell doors are solid except for a small window and a cuffport, which is used to pass food and other items to the prisoners. *Id.* ¶ 25.

The SCU also includes: (1) small indoor and outdoor spaces for recreation and exercise, which have exercise equipment and a basketball net, respectively; (2) a small indoor leisure room

3

with books, hot water to make drinks, and a television; (3) a law library, which is five small rooms each with a computer terminal; (4) a group room, with individual cages arranged in a line for six prisoners to participate in classes taught by other prisoners and religious services led by outside religious leaders; and (5) a space for prisoners to have non-contact visits with outsiders. *Id.* ¶¶ 28, 32–36, 40. There is no communal dining area; prisoners eat every meal alone in their cells. *Id.* ¶ 30.

SCU prisoners are confined in isolation to their cells for most of the day every day. *Id.* ¶ 2, 45. SCU prisoners' out-of-cell privileges are determined based on "Phase I" or "Phase II" status. *Id.* ¶¶ 2, 32–34. Prisoners are assigned to Phase I or Phase II based on factors that are not discussed in the Amended Complaint, but which relate to inmate safety and behavior. *Id.* ¶¶ 2, 33. Prisoners in both phases are allowed access to the "law library" (a room with a computer terminal) for an hour per day, and can use an indoor or outdoor recreation space five days a week for a total of six hours per week. *Id.* ¶¶ 32–33, 35. Prisoners may use exercise equipment, when recreation takes place indoors, and basketball nets, when it takes place outdoors. *Id.* ¶ 32. Prisoners in both phases may also participate in religious services led by outside religious leaders, prisoner-led classes, and non-contact visits by outside visitors, although the Amended Complaint does not specify the amount of time permitted for these activities. *Id.* ¶¶ 28, 40, 56. Phase II prisoners may participate in the recreation described above with assigned partners. *Id.* ¶ 33. They may also meet twice per week for one-hour sessions with those partners in the leisure room. *Id.* If, however, a Phase II prisoner's partner refuses to recreate with or meet with him on a given day, the prisoner will have solitary time in the recreation area or leisure room. *Id.* ¶ 34. Additionally, recreation and leisure room time are often cancelled and not rescheduled. *Id.* ¶ 39, 53.

SCU prisoners also have limited interactions—through the cell door—with correctional staff and mental health professionals, although prisoners may be removed to meet with a mental health professional in a more private setting. *Id.* ¶¶ 43-44. No SCU prisoners are allowed to have contact visits with family and friends. *Id.* ¶ 40.

Mr. Kadamovas alleges that he has been a Phase II inmate since 2014 and has not been disciplined for misconduct since 2010. *Id.* ¶¶ 51, 60. He acknowledges that he has the opportunities available to Phase II inmates described above to spend at least fifteen hours outside of his cell, eight of them with an assigned partner, and that he teaches an art class to other inmates. *Id.* ¶¶ 52(a), 56. Mr. Kadamovas complains, however, that his assigned partner "frequently refuses to go to recreation or to the 'leisure room.'" *Id.* ¶ 52(b). When this occurs, Mr. Kadamovas goes to recreation alone, but he also sometimes chooses not to go at all. *Id.* ¶ 55. Mr. Kadamovas also complains that the individual enclosures used for inmate-led classes and religious services do not provide a "meaningful opportunity to interact" and that inmates do not always attend his art class. *Id.* ¶ 56.

Mr. Kadamovas acknowledges that he speaks with a mental health professional at his cell front every month and that he has occasionally met with the professional privately, but he complains that these contacts "have not assisted with [his] mental health difficulties." *Id.* ¶ 57. Finally, Mr. Kadamovas alleges that the conditions of his confinement in the SCU "aggravate[]" chronic physical ailments for which he has received a medical diagnosis, including "Crohn's disease, high-blood [sic] pressure, asthma, sleep apnea, and severe pulmonary problems," and that his conditions of confinement cause him "depression, stress, heightened anxiety, difficulty in concentration, and memory difficulties." *Id.* ¶¶ 58, 59.

## II. Eighth Amendment Injunctive Relief Claim

The Eighth Amendment requires that prison officials provide "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Only, "[i]f the court finds the Eighth Amendment's subjective and objective requirements satisfied, it may grant appropriate injunctive relief." *Id.* at 846. An official violates the Eighth Amendment if he exhibits "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Id.* at 828 (citations omitted). The deliberate indifference standard contains "both an objective and subjective component." *Balle v. Kennedy*, 73 F.4th 545, 552 (7th Cir. 2023) (quoting *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021 and *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018)). Objectively, the challenged prison conditions must have been so serious that they "creat[ed] an excessive risk to the inmate's health and safety." *Id.* (quoting *Thomas,* 2 F.4th at 719–20 and *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017)). The official must also have been "subjectively aware of" the conditions and "intentionally disregarded" them. *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) (citation omitted). To survive a motion to dismiss, the complaint need not allege that the Defendants knew the conditions were dangerous to a prisoner's health or safety; instead, the complaint need only plead "sufficient facts to permit that inference." *Balle v. Kennedy*, 73 F.4th 545, 557 (7th Cir. 2023).

### A. Objective Requirement

First, Defendants argue that the amended complaint does not plead an extreme deprivation, *i.e.*, conditions that (1) "involve the wanton and unnecessary infliction of pain," (2) are "grossly disproportionate to the severity of the crime," or (3) deprive inmates of the "minimal civilized measure of life's necessities," such as food or medical care. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). They argue that the Eighth Amendment does not impose a per se prohibition on segregated confinement and Mr. Kadamovas's own allegations show that it is possible for him to

spend fifteen hours per week outside of his cell for various purposes, including eight hours with another inmate, and that he can spend additional unspecified time in religious services led by an outside minister, in visits by outsiders, and in inmate-led classes—including an art class that he teaches to other inmates. *See* dkt. 82 at 8-15; Dkt. 67 ¶¶ 28, 32–33, 35, 40, 56.

In response, Mr. Kadamovas asserts that the allegations in his amended complaint reflect that Defendants lock prisoners sentenced to death in their cells for 21-23 hours a day and otherwise deprive them of all normal human contact, meaningful time outside of their cells, and congregate interaction with other humans. Dkt. 76 at 2. Mr. Kadamovas argues that he has adequately alleged and intends to prove that subjecting death row prisoners to solitary confinement and isolation for the rest of their lives is inhumane and tantamount to torture. *Id.*; dkt. 67, ¶¶ 3, 59, 62–64. He alleges there is no justification for holding Mr. Kadamovas in solitary confinement for 16 years in the absence of displaying violent or dangerous behavior while in prison. *Id.* ¶¶ 60, 66.

The Court agrees that Mr. Kadamovas has adequately alleged a practice of deliberate indifference to the risk that isolation for 21-23 hours a day with no normal human contact or meaningful time outside the prison cells will and does cause serious harm to him and other death row prisoners. The Complaint alleges that (1) conditions in the SCU are severely isolating and restrictive, *id.* ¶¶ 2, 24–47; (2) the "expanded privileges" for Phase II death row prisoners provide little relief because the potential extremely limited interaction is restricted to one other person, *id.* ¶¶ 33-34, 38-39, 52-55; and (3) the "expanded privileges" for Phase II death row prisoners are frequently cancelled. *Id.* The conditions of confinement have allegedly caused Mr. Kadamovas's ongoing serious physical and emotional harms. *Id.* ¶¶ 58-59. In summary, the physical conditions of the SCU, and the restrictions the BOP has placed on these prisoners' time out of their cells and

opportunities to socialize with other prisoners, create a plausible risk of physical, mental, and emotional health to Mr. Kadamovas and the other prisoners.[1]

The Defendants' assertion that the Eighth Amendment does not impose a per se prohibition on segregated confinement is well taken. Dkt. 73 at 15-21 (citing cases including *Hutto v. Finney*, 437 U.S. 678, 686 (1978)). However, the Seventh Circuit has held that "prolonged confinement in administrative segregation may constitute a violation of the Eighth Amendment ... depending on the duration and nature of the segregation and whether there were feasible alternatives to that confinement." *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (quoting *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012) (citing *Walker v. Shansky*, 28 F.3d 666, 673 (7th Cir. 1994)); *see also Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987)). The claims in this case are distinguishable from other solitary confinement cases that have been dismissed in that Mr. Kadamovas alleges that he and his proposed class will reside in the SCU under the conditions alleged for the rest of their lives regardless of their current conduct and the individual on-going risks they pose. *See Isby,* 856 F.3d at 522-524; *Meriwether*, 821 F.2d at 417 (explaining "[o]bviously influencing whether prolonged segregation constitutes cruel and unusual punishment is the existence of feasible alternatives."). The amended complaint adequately alleges that Mr. Kadamovas does not have any path to escape his continued placement in the SCU and this placement is harming his health. Dkt. 76 at 14-21. Further development of the factual record supporting this claim is appropriate. For example, whether there are feasible alternatives to the restrictions in the SCU requires further development. *See* dkt. 73 at 21-24. *See Porter v. Clarke*,

---

[1] Dkt. 67 ¶ 59 ("Mr. Kadamovas recognizes that his isolated confinement in the SCU for 16 years has caused him, and is causing him, severe emotional and psychological problems including depression, stress, heightened anxiety, difficulty in concentration, and memory difficulties.")); *id*. ¶ 58 (listing specific physical problems aggravated by his solitary conditions); *id*. ¶ 57 (describing how he "has been removed from his cell occasionally to talk to the mental health professional in the past year," but that these brief contacts have not ameliorated the harms caused by his prolonged isolated confinement.)).

290 F.Supp.3d 518 (E.D. Va. 2018), *aff'd*, 923 F.3d 348 (4th Cir. 2019) ("[G]iven the rapidly evolving information available about the potential harmful effects of solitary confinement," the court was not bound by "decades-old" precedent holding that prolonged isolation is not necessarily unconstitutional." *Id.* at 528-29).

Mr. Kadamovas "only had to plead facts suggest[ing] a plausible claim for relief; he did not need to identify specific measures [Defendant] should have taken to protect him from the [harmful] conditions." *Balle v. Kennedy,* 73 F.4th 545, 558 (7th Cir. 2023) (internal quotes and citations omitted). Given Mr. Kadamovas's allegations, it is plausible that Defendants could have made the conditions in the SCU safer or less harmful. *See Smith v. Ryan*, 137 S. Ct. 1283, 1283-84 (2017) (Breyer, J. statement respecting denial of certiorari) (questioning whether forty years of solitary confinement can serve any "legitimate purpose" and urging the Court to "consider in an appropriate case the underlying constitutional question.").

Dismissal is not warranted on this basis.

### B. Subjective Requirement

Next, Defendants argue that this action should be dismissed because Mr. Kadamovas has not alleged facts establishing that they had actual knowledge of a substantial risk of harm attributable to the conditions of the SCU. Dkt. 82 at 16-22. Mr. Kadamovas argues that the government officials in charge of the prison are aware of his conditions as they are the very individuals responsible for his conditions of confinement. Dkt. 76 at 9 and 11 (citing *Porter v. Clarke*, 923 F.3d 348, 358-59 (4th Cir. 2019) (addressing research on the "serious" risks posed by solitary confinement); *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) ("acknowledg[ing] the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement")); *see also* dkt. 67 at ¶¶ 3,

9

68. In addition, the amended complaint includes Mr. Kadamovas's grievances challenging the harm caused by the isolated conditions in the SCU. Dkt. 67-1.

The Court agrees that Mr. Kadamovas plausibly alleges that Defendants are aware of the substantial risk of serious harm that their use of isolation subjects him and the class to, and that Defendants' actions, including placing all federal prisoners facing a death sentence in the USP-Terre Haute's SCU, have demonstrated deliberate indifference to this risk. *See Balle v. Kennedy*, 73 F.4th 545, 557 (7th Cir. 2023) (liberally construed, complaint pleaded sufficient facts to permit inference that Defendant was aware of danger); *Apodaca v. Raemisch*, 139 S. Ct. 5, 9 (2018) (Sotomayor, J., statement respecting denial of certiorari) ("Courts and corrections officials must accordingly remain alert to the clear constitutional problems raised by keeping prisoners . . . in near-total isolation from the living world, in what comes perilously close to a penal tomb") (citation, internal quotation marks omitted).

### III. Conclusion

The motion to dismiss, dkt. [72], is **DENIED.** Given this ruling, the Appeal of the Magistrate Judge Decision denying the motion to temporarily stay discovery pending resolution of the motion to dismiss, dkt. [86], is **DENIED as moot.**

IT IS SO ORDERED.

Dated: September 18, 2024

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:
All Electronically Registered Counsel