UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JURIJUS KADAMOVAS, Plaintiff, | ) | |
| v. | ) | No. 2:23-cv-00022-MPB-MKK |
| FEDERAL BUREAU OF PRISONS, STEVEN KALLIS, THOMAS J. WATSON, Defendants. | ) | |

**Order Denying Motion to Certify Class**

Plaintiff Jurijus Kadamovas filed this action on his behalf and on behalf of a class of those similarly situated on January 1, 2023, arguing that the conditions of their confinement in the Special Confinement Unit ("SCU") at the United States Penitentiary in Terre Haute, Indiana, ("USP Terre Haute") violated their rights under the Eighth Amendment. Dkt. 1.

Pending before the Court is Mr. Kadamovas's amended motion to certify class. Dkt. 190. For the following reasons, that motion is **denied**.

**A. Background**

When Mr. Kadamovas filed the complaint, the SCU consisted of 38 male prisoners who had been sentenced to death and were confined on USP Terre Haute's death row. *Id.* at 1. In December 2024, President Biden commuted the sentences of 37 of those inmates to life imprisonment. Dkt. 147.

On December 30, 2024, the parties filed a joint motion to stay the proceedings in this action because the Bureau of Prisons ("BOP") was evaluating the inmates whose sentences were commuted for placement in other BOP facilities. *Id.* at 2. But twenty of the current SCU prisoners,

including Mr. Kadamovas, remain confined in the SCU indefinitely due to pending litigation preventing their transfer. Dkt. 190-1 at ¶¶ 7-8; *see Taylor, et al. v. Trump, et al.*, No. 1:25-3742-TJK, Dkt. No. 71 (D.D.C. Feb. 11, 2026) (preliminary injunction preventing transfer to ADX Florence). There are three other prisoners also confined to the SCU. Dkt. 190-1 at ¶ 6. Because of the uncertainty as to when the twenty inmates whose sentences were commuted will be transferred to other BOP facilities, the Court lifted the stay on February 17, 2026. Dkt. 175.

On June 25, 2026, Mr. Kadamovas filed a second amended complaint that accounted for the aforementioned factual developments. Dkt. 195. He seeks class certification, a declaration that the defendants have violated the Eighth Amendment, and injunctive relief. *Id.* at 15.

According to Mr. Kadamovas, the conditions of confinement for all prisoners in the SCU uniformly feature a lack of meaningful socialization and stimulation, leaving them effectively isolated. Dkt. 190-1 at ¶ 43. Inmates in the SCU are restricted to their single cells except for a few hours each week. *Id.* at ¶¶ 12-20, 23, 25-28. Their only relief from this isolation is limited solitary recreation where they have limited-to-no interaction with each other. *Id.* at ¶¶ 15, 19.

Mr. Kadamovas has attested that the conditions of confinement on the SCU have become even more restrictive since the commutation of the death sentences. *Id.* at ¶ 43. Before the commutations, the prisoners were divided into two levels based on their behavior. *Id.* at ¶¶ 16-18. Those in "Phase I" were allowed out of their cells for solitary recreation five days a week for one hour each day, with an allowed expanded recreation time of two hours one of those days. *Id.* at ¶ 17. When prisoners were granted "Phase II" status, they were allowed to participate in the aforementioned recreation opportunities with one other assigned prisoner and were allowed to meet with that assigned prisoner two days a week for 60-90 minutes in the "leisure room." *Id.* at ¶ 18. After the commutations, the BOP removed the phase system, so now the inmates must go to

recreation by themselves and there is no use of the "leisure room." *Id.* at ¶ 19.

Recreation time has been reduced and is scheduled at different times, often very early in the morning, which discourages the inmates from leaving their cells. *Id.* at ¶ 20. Further, before the commutations, the inmates in the SCU were restrained according to their perceived security risk, but now, any SCU inmate must have cuffs attached to a chain that wraps around his stomach when he leaves his cells. *Id.* at ¶ 21. SCU prisoners are not allowed contact visits with family and friends, only non-contact visits. *Id.* at ¶ 28. In short, inmates in the SCU will spend most of their days in complete isolation. *Id.* at ¶ 23.

Mr. Kadamovas was previously a Phase II prisoner, but now his conditions are the same as all other SCU prisoners. *Id.* at ¶ 38. Mr. Kadamovas attests that these increasingly restrictive conditions have caused and continue to cause him and the others in the SCU physical, emotional, and psychological injury and harm. *See, e.g., id.* at ¶¶ 39, 41, 43.[1]

Defendants dispute that conditions are uniform for all SCU prisoners. They maintain that the Phases still exist, but post-commutations the inmates who were previously allowed to recreate with other inmates in the leisure room lost that privilege. Dkt. 209-1 at ¶¶ 8, 29. For some inmates no longer sentenced to death, BOP staff have been able to relax some of the restrictive policies to permit more recreation, more phone time, and a larger commissary list. *Id.* at ¶ 8, n. 4. An inmate's recreation depends on each inmate's phase and his personal preferences, such as whether he wants to attend religious services, classes, legal or social visits, or whether to seek a job as an orderly. *Id.* at ¶ 39. Indeed, some Phase I inmates have specifically chosen not to participate in Phase II. *Id.* at ¶ 27.

[1] As it relates to other inmates in the SCU, Mr. Kadamovas states only, "I am sure that all of the SCU prisoners are affected by the lack of recreation, stimulation, and socialization" and that he is aware that one SCU inmate died by suicide in December of 2023. *Id.* at ¶¶ 41, 42.

Inasmuch as Mr. Kadamovas believes that the conditions in the SCU affect all inmates housed there, he seeks an injunction for himself and all the other SCU prisoners, and seeks to represent a class defined as:

> all current and future prisoners confined to the Special Confinement Unit at the U.S. Penitentiary, Terre Haute, Indiana.

Dkt. 191 at 4. Defendants oppose class certification. Dkt. 209. The matter is now ripe for the Court's consideration.

**B. Legal Standard**

"A class 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011) (quoting *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982)). Under Federal Rule of Civil Procedure 23(a), one or more members of a class may sue on behalf of all members to the class only if:

1. the class is so numerous that joinder of all members is impracticable;
2. there are questions of law or fact common to the class;
3. the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4. the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "The party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015).

In addition to meeting the requirements of Rule 23(a), "the class must satisfy one of the four conditions in Rule 23(b)." *Id.* Here, Mr. Kadamovas seeks certification under Rule 23(b)(2), which allows for class certification when "the party opposing the class has acted or refused to act

on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

**C. Discussion**

Evaluating each of the factors in Rule 23(a), the Court finds that class certification is not appropriate.

**i. Numerosity**

Rule 23(a)(1) provides that a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Rule 23(a)(1) is often referred to as the "numerosity" requirement. "The key numerosity inquiry under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder." *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). "While 'impracticable' does not mean 'impossible,' a class representative must show 'that it is extremely difficult or inconvenient to join all the members of that class.'" *Id.* (quoting 7A C. Wright & A. Miller, Federal Practice & Procedure § 1762 (3d ed.). To determine whether joinder is practicable, the court must evaluate "'the nature of the action, the size of the individual claims, and the location of the members of the class . . . that is the subject matter of the dispute.'" *Id.* (quoting Wright & Miller at § 1762). Courts in this Circuit have recognized that "a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Ind. C.L. Union Found., Inc. v. Superintendent, Ind. State Police*, 336 F.R.D. 165, 172 (S.D. Ind. 2020) (quoting *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017)). But that number is not a benchmark requirement.

The Court finds that Mr. Kadamovas has not shown that joinder is impracticable. As a preliminary matter, it is telling that *Taylor* consists of 21 of the SCU inmates whose sentences were commuted. That the plaintiffs in that case have managed to jointly litigate their claims in

*Taylor* indicates they could do so here, too. Further, the location of the other class members is known to Mr. Kadamovas and his counsel; each SCU inmate can easily be identified and can decide for himself whether he wants to join in this case. Finally, the Court agrees with the defendants that the population of the SCU is almost certainly guaranteed to shrink once inmates are evaluated for redesignation consistent with the preliminary injunction issued in *Taylor*.[2] Accordingly, Mr. Kadamovas fails to meet the numerosity requirement.

While the Court could stop its inquiry here, it evaluates Rule 23's other requirements and finds them to be lacking. *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020) ("Failure to meet any of" Rule 23's requirements "precludes class certification.").

**ii. Common Questions of Law or Fact**

Commonality requires that there is "a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Ross v. Gossett*, 33 F.4th 433, 437-39 (7th Cir. 2022) (finding that the common contention—whether a prison's shakedown policy violated plaintiffs' rights—was capable of classwide resolution).

While Mr. Kadamovas asserts that every inmate in the SCU is subject to the same restrictive conditions that collectively violate the Eighth Amendment, the conditions depend on each inmate's classification in the different phases. That is, there are several distinct BOP practices relevant to Mr. Kadamovas's claims about alleged isolation and socialization, including the Phase Program, under which inmates in different phases have different levels of access to social interaction with other inmates. Dkt. 209-1 at ¶¶ 20–30. In addition, inmates have the opportunity

[2] Additionally, the Court agrees with the defendants that considering future inmates who may be housed in the SCU due to being newly sentenced to death is speculative.

to seek additional social contact by teaching a class, seeking a job as an orderly, or arranging additional social visits. *Id.* at ¶¶ 28–29, 38–39. Thus, the Court finds that there are insufficient questions of common fact or law to make class certification appropriate.

**iii. Typicality**

Rule 23(a)(3) requires that the claims of the representative parties be typical of those of the class. As the Supreme Court has noted, this requirement is intertwined with the commonality requirement:

> [t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class-members will be fairly and adequately protected in their absence.

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). As described above, despite Mr. Kadamovas's description of the SCU as being a one-size-fits-all housing unit, the defendants' evidence shows that the conditions are not the same for each inmate, or, at minimum, the conditions do not affect the inmates in the same way. Some inmates have chosen not to proceed to Phase II because they are comfortable with the conditions in Phase I. *Id.* at ¶ 27. And although Mr. Kadamovas asserts that these conditions have exacerbated his mental health conditions as it relates to his depression and anxiety, it is not clear his mental health struggles are attributable to the conditions or to his underlying mental health diagnoses. Nor does he submit affidavits or other evidence from other inmates in the SCU to show that they are affected similarly by the isolating conditions. Thus, the typicality component has not been met.

**iv. Fair and Adequate Protection of the Interests of the Class**

Typically, courts split the adequacy inquiry into two parts: "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different,

separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993). The defendants do not contest that counsel for the party is adequate. Dkt. 209 at 31, n.9. Rather, they argue that Mr. Kadamovas would not adequately represent the class for the same reasons why the typicality prong is not satisfied; that is, his concerns that he receive more recreation time with more meaningful interaction is not aligned with inmates in the SCU who are satisfied with their level of social engagement. The Court agrees.

Because Mr. Kadamovas has not satisfied the requirements of Rule 23(a), the Court does not consider whether he satisfies Rule 23(b).

**D. Conclusion**

The SCU has changed since Mr. Kadamovas filed this lawsuit in January 2023, and it is clear to this Court that the population of the SCU will continue to evolve in the months that come. Because Mr. Kadamovas has failed to show that the population is too numerous that joinder is impracticable, and because he does not otherwise satisfy the other prongs of Rule 23(a), the amended motion to certify class, dkt. [190], is **denied**.

**IT IS SO ORDERED.**

Dated: September 9, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel